UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHAPIN REVENUE CYCLE MANAGEMENT,
LLC, ET AL.,

    Plaintiffs,
v.                            Case No. 8:11-cv-858-T-33AEP

JDA eHEALTH SYSTEMS, INC. and
JAMES D. DUDLEY,

    Defendants.
_____/

**ORDER**

This matter is before the Court pursuant to Defendants' Motion to Dismiss and, in the Alternative, Motion to Transfer Venue (Doc. # 5), filed on May 26, 2011. Plaintiffs filed a response in opposition thereto (Doc. # 12) on June 13, 2011, and Defendants filed a reply (Doc. # 20) on August 1, 2011.

On February 3, 2012, Defendants filed a Notice of Partial Withdraw [sic] of Defendants' Motion to Dismiss and, in the Alternative, Motion to Transfer Venue (Doc. # 32). Defendants partially withdraw their Motion to the extent that the Motion challenges personal jurisdiction. Because Defendants no longer challenge personal jurisdiction in the State of Florida, the Court will address the remaining grounds for dismissal set forth in their Motion. For the reasons that follow, the Court denies the Motion.

**I. Background**

Plaintiffs filed suit against JDA eHealth Systems and James D. Dudley on April 20, 2011, alleging tortious interference with advantageous business relationships. (Doc. # 1). Plaintiffs allege that JDA and Dudley sent a letter to Bon Secours Health Systems, Inc., a key client of Plaintiff Chapin Revenue Cycle Management, LLC and a prospective client of Plaintiff Auditz, LLC, alleging that Chapin had copied JDA's software. (Id. at ¶¶ 2, 39-40). Plaintiffs allege that this accusation, made without adequate investigation or good faith, caused Bon Secours to cease doing new business with Chapin, terminate contract negotiations with Auditz, and abandon its plans to expand its relationships with Chapin and Auditz. (Id. at ¶¶ 2-3, 41).

The remaining Plaintiffs--Keith Henthorne, CRCM-KH, Inc., Tammy Vitte, CRCM-TV, Inc., Tim Carda, David Finkel, Philip Shasteen and Lisa Shasteen--are all former Chapin members who held shares of ownership interests in Chapin prior to selling their shares to Envoy, LLC (known as "Emdeon"). (Id. at ¶¶ 8-16). As part of the sale, the Former Chapin Members entered into earn-out and escrow agreements with Emdeon. (Id. at ¶ 33). The earn-out agreement entitled the Former Chapin Members to additional payments from Emdeon based upon Chapin's

profitability. The escrow agreement allowed Emdeon to hold back share sale proceeds for a time to secure Emdeon against any potential breaches of the Former Chapin Members' representations and warranties. (Id. at ¶ 34).

Bon Secours is also a client of JDA, and Chapin became introduced to JDA and Dudley through that relationship. (Id. at ¶¶ 23, 27). Chapin, JDA and Dudley briefly explored the possibility of developing strategic business alliances, entering into a non-disclosure agreement, exchanging financial information and meeting in Tampa, Florida, on multiple occasions. (Id. at ¶ 28).

The Former Chapin Members sold their stock in Chapin to Emdeon on June 21, 2010. (Id. at ¶ 32). Emdeon also acquired an option to purchase certain Auditz software licensed to Chapin. (Id. at ¶ 35). Plaintiffs allege that JDA and Dudley, "upon learning of the sale and the significant amount of money involved," made several "inferential leaps" and concluded that Chapin must have copied JDA's software. (Id. at ¶ 36). Based upon this conclusion, JDA and Dudley sent letters to Chapin, Auditz, Emdeon and Bon Secours, alleging that JDA's software had been copied. (Id. at ¶ 39). As a result, Bon Secours curtailed its business with Chapin and Auditz, and Emdeon

3

declined to exercise its option to purchase Auditz's software. (Id. at ¶ 41-42).

JDA filed suit against Chapin and Auditz in the Northern District of Illinois on December 8, 2010, alleging copyright infringement, unfair trade practices and unfair competition under the Lanham Act, breach of confidentiality agreement, and additional counts under Illinois state law. That matter was transferred to this District on August 4, 2011. See Case No. 8:11-cv-1785-T-17TGW.

## II. Legal Standard

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.")

However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

4

> recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

The Court notes that the Motion to Dismiss has not been converted into a motion for summary judgment because the Court has not considered matters outside the pleadings.[1] "Rule 7(a) defines 'pleadings' to include both the complaint and the answer, and Rule 10(c) provides that '[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.'" Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (quoting Fed. R. Civ. P. 7(a) and 10(c)). Thus, the Court may consider the various exhibits attached to the Complaint without converting the Motion to Dismiss into one for summary judgment.

---

[1] When a document outside the pleadings is considered, Federal Rule of Civil Procedure 12(c) requires that "the motion be treated as a motion for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all materials made pertinent by such a motion."

5

Federal Rule of Civil Procedure 12(b)(3) allows a defendant to move to dismiss an action for improper venue. The cure of defects in venue is governed by 28 U.S.C. § 1406(a), which provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "Trial courts generally have broad discretion in evaluating venue arguments and determining whether to transfer or dismiss a case." LaFerney v. Citizens Bank of E. Tenn., No. CV 210-169, 2011 WL 4625956, at *1 (S.D. Ga. Sept. 30, 2011).

## III. <u>Analysis</u>

Plaintiffs' three-count complaint alleges tortious interference with the advantageous business relationships of Chapin, Auditz and the Former Chapin Members. "The elements of tortious interference with a business relationship are '(1) the existence of a business relationship . . . (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.'" Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994)

6

(quoting Tamiami Trail Tours, Inc. v. Cotton, 463 So. 2d 1126, 1127 (Fla. 1985)).

Defendants move to dismiss the Complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) or, in the alternative, to transfer the case to the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1406(a). Defendants further move to dismiss the Complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). Because questions of venue must be resolved before this Court can properly address substantive claims, this Court will first determine whether venue is proper in this District.

**A.   Improper Venue**

Defendants assert that the Complaint should be dismissed for improper venue because JDA is an Illinois corporation with a principal place of business in Naperville, Illinois, and Dudley is a resident of Illinois. (Doc. # 5 at ¶ 43). Defendants further argue that "none, let alone a substantial part, of Defendants' acts or omissions giving rise to Plaintiffs' claims occurred in this district." (Id. at ¶ 49).

Venue is governed by 28 U.S.C. § 1391:

> (b) Venue in general. A civil action may be brought in--

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). As to residency, a corporation "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Because JDA now concedes personal jurisdiction in the State of Florida, JDA is deemed to reside in this District.

Whatever the merits of Plaintiffs' assertion that Dudley resides in Florida, the Complaint alleges that Dudley is an Illinois resident.[2] (Doc. # 1 ¶ 18). In addition, Dudley states in an affidavit that "my home, my family, and my

---

[2] On a 12(b)(3) motion to dismiss, "the court may consider matters outside the pleadings if presented in the proper form by the parties." MGC Commc'n, Inc. v. Bellsouth Telecomm, Inc., 146 F. Supp. 2d 1344, 1349 (S.D. Fla. 2001). Plaintiffs have provided documentary evidence of Dudley's Florida residence, but no affidavits establishing that he is domiciled in Florida. Thus, in an abundance of caution, the Court will not consider this evidence.

8

business are all located in the State of Illinois." (Doc. # 20-1 at ¶ 11).

Thus, the Court will consider whether a substantial part of the events occurred in this District. "A plaintiff is not required to select the venue with the most substantial nexus to the dispute; it must simply choose a venue where a substantial part of the events giving rise to the claim occurred." Gulf Power Co. v. Coalsales II, LLC, No. 3:06-cv-270/MCR, 2008 WL 563484 (N.D. Fla. Feb. 27, 2008) (internal quotations and citations omitted).

Defendants assert that a substantial part of the claim occurred in the Northern District of Illinois, but their own arguments belie that assertion. Defendants argue that JDA's counsel in Dallas, Texas, sent letters to Emdeon's general counsel in Nashville, Tennessee, and to Bon Secours' corporate counsel in Marriottsville, Maryland, at the behest of JDA in Naperville, Illinois. (Doc. # 5 at ¶ 48). None of these venues presents a strong focal point for this action.

Plaintiffs, on the other hand, argue that venue lies in this District because Plaintiffs were injured here. This argument has merit. See Seminole Transp. Specialists, Inc. v. PDM Bridge, LLC, No. 8:09-cv-1885-T-23MAP, 2009 WL 3822773, at *2 (M.D. Fla. Nov. 16, 2009) (finding venue proper in the

9

Middle District of Florida because defendant intentionally interfered with the plaintiff's business relationships in Florida); Capital Corp. Merch. Banking, Inc. v. Corporate Colocation, Inc., No. 6:07-cv-1626-Orl-19KRS, 2008 WL 4058014, at *3 (M.D. Fla. Aug. 27, 2008) (finding, in the context of defamation and other non-physical torts, that venue is proper where the plaintiff suffered harm).

Furthermore, Dudley joins with JDA in withdrawing their motion to dismiss for lack of personal jurisdiction, although he did not expressly concede to personal jurisdiction in this state. The withdrawal subjects Dudley to personal jurisdiction in this Court, and 28 U.S.C. § 1391(b)(3) would make venue proper in this District even if a substantial portion of the events did not occur here.

Upon due consideration, the Court finds that venue is proper in this District. The Court therefore denies the Motion to Dismiss for improper venue and the alternative motion to transfer to the Northern District of Illinois. The Court will now turn to Defendants' substantive claims.

**B.  Failure to State a Claim for Relief**

Defendants argue that Plaintiffs' claims should be dismissed because Defendants' conduct in sending litigation hold letters to third parties is justifiable. (Doc. # 5 at ¶

10

29). Defendants assert that the letters "were not intended, and did not direct, any third party with whom Plaintiff had an established business relationship to alter their relationship(s) with Plaintiffs in any manner." (Id. at ¶ 33). Defendants argue that the letters are privileged communications designed to protect JDA's economic interest in its copyright software. (Id.).

Defendants' argument is misplaced. Defendants may assert privilege as an affirmative defense, but such an assertion is inappropriate in a motion to dismiss. See Law Offices of David J. Stern, P.A. v. SCOR Reinsurance Corp., 354 F. Supp. 2d 1338, 1346 (S.D. Fla. 2005) (noting that privilege is an affirmative defense that a defendant has the burden of proving). A defendant may raise an affirmative defense in a motion to dismiss only "where the existence of the defense can be judged on the face of the complaint." Haddad v. Dudek, 784 F. Supp. 2d 1308, 1324 (M.D. Fla. 2011). "The question of whether certain conduct is privileged, however, is a factual question to be determined by a jury. It is not appropriate for the Court to make this factual determination." Law Offices of David J. Stern, P.A., 354 F. Supp. 2d at 1346. Defendants acknowledge that "[w]hether a defendant's interference is justified is normally a fact question." (Doc. # 5 at ¶ 31).

11

Thus, the Court may not resolve the issue of whether Defendants' conduct was justified or privileged on a Motion to Dismiss. See id. (denying motion to dismiss tortious interference claim based upon defendant's assertion that the alleged interference was justified and privileged). Considering only the allegations within the Complaint, and construing them in the light most favorable to Plaintiffs, the Court denies the Motion on the grounds that Defendants' actions were justified or privileged.

Defendants next argue that Auditz's claim must be dismissed because Auditz has failed to allege facts establishing that it had a business relationship and that Defendants had knowledge of that relationship. (Doc. # 5 at ¶ 35). However, "[a] protected business relationship need not be evidenced by an enforceable contract." Id. (internal quotations and citations omitted). "[A]n action for intentional interference with a business relationship or expectancy will lie if the parties' understanding would have been completed if the defendant had not interfered." Charles Wallace Co. v. Alt. Copier Concepts, Inc., 583 So. 2d 396, 397 (Fla. 2d DCA 1991).

Plaintiffs allege in their Complaint that "Chapin (now owned by Emdeon) acquired an option to purchase certain Auditz

12

software." (Doc. # 1 at ¶ 35). Furthermore, "Auditz had a business relationship with [Bon Secours], including but not limited to an understanding or agreement for establishment of a business and/or contractual relationship in the immediate future." (Id. at ¶ 51). Accepting these allegations as true, the Court finds them sufficient to establish the existence of prospective business relationships.

Plaintiffs allege that "JDA and Dudley knew about this relationship by virtue of their prior business relationship." (Id. at ¶ 52). Defendants call this allegation conclusory "because it requires Plaintiffs . . . to enter the minds of Defendants . . . to surmise what they knew." (Doc. # 5 ¶ 52). However, Plaintiffs need not prove knowledge at this stage of the proceedings. Furthermore, Plaintiffs allege that Defendants' knowledge is "evidenced by the fact that they contacted Auditz regarding their allegations of computer software copying." (Doc. # 1 at ¶ 52). The Court finds Plaintiffs have alleged a basis for Defendants' knowledge of Auditz's business relationships sufficient to survive the Motion to Dismiss.

Defendants further argue that Plaintiffs have failed to allege facts establishing that Defendants knew of the business relationships of the Former Chapin Members. Defendants assert

13

that Plaintiffs' allegations are conclusory because Chapin was a closely held limited liability corporation and Defendants would not have known the identity or interests of the Former Chapin Members. (Doc. # 5 at ¶ 40). Further, Defendants argue that they did not know the precise terms of the Former Chapin Members' earn-out and escrow agreements. (Id.).

However, Plaintiffs' allegations do not suppose specific knowledge of Chapin's former corporate structure or the nature of the earn-out and escrow agreements. Plaintiffs allege that "JDA and Dudley knew that the Former Chapin Members had earn-out and escrow agreements in place because this is a standard practice in the sale of closely-held corporations, and JDA and Dudley had reviewed press releases and securities filings related to Emdeon's purchase of the stock of the Former Chapin Members." (Doc. # 1 at ¶ 60). Attached to the Complaint are a press release, news item and letters supportive of these allegations. (Doc. ## 1-2, 1-3, 1-4, 1-5). The Court finds, at this stage of the proceedings, that Plaintiffs have alleged an adequate basis for Defendants' knowledge of the business relationships of the Former Chapin Members.

Based upon the foregoing analysis, the Court denies Defendants' Motion to Dismiss for failure to state a claim upon which relief can be granted.

Accordingly, it is

**ORDERED, ADJUDGED** and **DECREED** that:

Defendants' Motion to Dismiss and, in the Alternative, Motion to Transfer Venue (Doc. # 5) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>13th</u> day of February 2012.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record